JOSEPH R. HOLLIDAY, plaintiff in error, *vs.* R. M. McPHERSON & Co., and HOGE, MILLS & Co., defendants in error.

1. This Court will not control the discretion of the Chancellor in continuing or dissolving injunctions, except where there may be an abuse of discretion.

Dissolution of Injunction.    Decided by Judge COLLIER. Chambers.    Fulton County.    July, 1867.

On the 16th October, 1866, in Fulton Superior Court, R. M. McPherson & Co. obtained a judgment against Hoge, Mills & Co., for 1,009.65 principal, $64.68 interest, and $— costs. *Fi. fa.* was issued and levied, on 28th January, 1867, on a large lot of machinery, (specifying the articles) a large lot of flasks, a large lot of patterns of various kinds, and a lot of iron tools, as the property of the defendants, Hoge, Mills & Co., they having pointed it out to the deputy sheriff. The property was advertised for sale on the first Tuesday in April, 1867.

On the day of sale, Joseph R. Holliday filed a bill alleging, that on the first day of December, 1866, the Gate City Car Manufacturing and Machine Works, a body corporate, of said county and State, by their superintendent, James Hoge, executed and delivered to him, a mortgage upon all the machinery of every kind and description belonging to said corporation, to secure a promissory note of that date, and due three months after date, for $4,000, which mortgage was duly recorded; the note was not paid, and on the 6th March, 1867, the mortgage was foreclosed, and the mortgage *fi. fa.* was levied on the same property (levied on by the common-law *fi. fa.*) as the property of the corporation, and under it the property was to be sold on the first Tuesday in May, 1867; the members of the firm of Hoge, Mills & Co., are some of them, if not all, members of said corporation, which was incorporated by the General Assembly of Georgia, at the session of 1865–6, and about that time the corporation organized and purchased of Hoge, Mills & Co., all the property, or nearly so, that was mortgaged to Holliday; the firm of Hoge, Mills

& Co. is composed of James Hoge, John C. Hendrix, J. G. W. Mills and Edwin Payne, of Fulton county, George W. Lee, of DeKalb county, and James M. Austin and ———— Garrison, whose residences he did not know, and R. M. McPherson & Co. is composed of Rufus M. McPherson, of Arkansas, and J. H. Jeroulman, of Fulton county ; that he has tried to induce McPherson & Co. not to sell said property, but they insist on doing so, which is contrary to equity, in that the said goods and chattels so mortgaged to him, if sold by the *fi. fa.* of R. M. McPherson & Co., may be so scattered abroad among different purchasers, as that it will be impossible, perhaps, for him again to gather them up, and if not impossible, at least very difficult and expensive.

The prayer was that defendants should answer the bill, and that the sale under R. M. McPherson & Co.'s *fi. fa.* should be enjoined.

The bill was verified by one of complainant's solicitors, who swore that the facts were true according to the best of his knowledge, information and belief.

The mortgage (made an exhibit to the bill) was in the usual form, reciting that " we, James Hoge, John C. Hendrix, James M. Austin, ———— Garrison, Frederick G. Stewart, Edwin Payne and J. G. W. Mills, operating under the style of " Gate City Foundry, Car Manufacturing and Machine Works," all of said county and State, for and in consideration, &c.,     *     *     *     *     *     and for the better securing the payment of a certain promissory note, said James Hoge, &c., (re-naming them) have this day made and delivered to Joseph R. Holliday, bearing date with these premises, and to become due three months after date thereof, whereby said James Hoge, &c., (re-naming them) promised to pay said Joseph R. Holliday $4,000 for value received, have bargained, &c., "all the machinery of every description and kind whatever, belonging to the said James Hoge, &c., (re-naming them) now in the factory, situated on Marietta street, in the city of Atlanta, consisting in part of steam engines, lathes and planers, &c." To have and to hold, &c. And the said James Hoge, &c., (re-naming them) will warrant and defend the

title, &c., *provided*, that if said James Hoge, &c., (re-naming them) should pay the note, &c., this conveyance is. to be void. In testimony, whereof, said James Hoge, &c., (re-naming them) have hereunto set their hands and seals, this the first day of December, 1866.    It was signed " James Hoge, Superintendent Gate City Foundry, Car Manufacturing and Machine Works."

The bill was sanctioned and the sale enjoined.

On the 17th May, 1867, R. M. McPherson & Co., and Hoge, Mills & Co. answered the bill.

Hoge, Mills & Co. admitted the note and mortgage were made and delivered (to James M. Willis, as agent for complainant,) for a sum of money loaned to said Company by complainant, through his said agent, and the existence of the two *fi. fas.* and two levies, &c., as before described.

They denied, however, that the mortgage covered all the property levied on by McPherson & Co.'s *fi. fa.*   They averred that said agent asked for no other mortgage than one on the machinery, and presented a mortgage agreeable to Holliday, which Mills copied (changing names, &c., to suit) and had signed and sealed; they averred that the term machinery does not include the flasks nor patterns, nor iron tools; that they were informed that the deputy sheriff made the levy on the mortgage *fi. fa.* by procuring Mr. Welborn, who was then staying in the office of complainant's solicitors, and was then, perhaps, (as he is now) their partner, to make a copy of the levy on R. M. McPherson & Co's *fi. fa.*, only changing it so as to fit the mortgage *fi. fa.;* that thus, by an honest mistake of Welborn and the deputy sheriff, the mortgage *fi. fa.* was levied on more than it covered.

They admitted that Hoge, Mills & Co. was composed of the persons as charged, and divers others, and that that firm procured the act of incorporation.    They averred that the old Company and the corporation were the same, with these exceptions, to wit: Thos. Chandler, Hammond Marshall, Frederick G. Stewart and John S. Westbrooks, were members of the firm and corporation both, and that since the incorporation, Geo. W. Lee, Thos. Chandler, Hammond Marshall, John S. West-

brooks and Frederick G. Stewart, have gone out, and C. P. Garrison has come in, and Wm. R. Phillips purchased and took transfers of Stewart's stock, and they considered him also a member of the corporation, that the corporation has no President, but its chief officer is James Hoge, known as Superintendent.

They denied that the corporation purchased said property from the firm, in the sense of paying for it; but, they said, the truth was, that the old firm procured the charter, certain parties went out and certain others came in as aforesaid, and they simply changed the books from Hoge, Mills & Co., to the corporate name, and the corporation went on to finish the business of the firm, assuming its liabilities.

Besides, they averred that said agent, before he took the mortgage, was distinctly told by said Hoge and said Mills, that said machinery, which they were mortgaging, was encumbered by two liens, to-wit: a *fi. fa.* in favor of R. M. McPherson & Co., for $1,009, besides interest and costs, and a *fi. fa.* in favor of Lewis Spitzer & Co., for $2,000, besides interest and costs, both obtained at October term, 1866, of Fulton Superior Court, and that these *fi. fas.* had a prior lien on said property, was well known to said agent before he took the mortgage.

They said that they did not believe McPherson & Co., or their attorneys, ever saw Holliday, but that Wm. R. Phillips, aforesaid, as they were informed and believed, did try to get said attorneys not to sell said property, and they would not desist; that the injunction stopped the sale of patterns, insured for $5,000, and worth more than that, of tools worth $2,000, and flasks worth $1,500, which were not, nor were intended to be, covered by said mortgage, and do not belong to the machinery of the works, but are separate and distinct things, and that the machinery alone, at a low valuation, was worth $6,000, that the whole establishment cost about $35,000, and was insured for $15,000, (including the patterns) all of which insurance was transferred to Holliday when the mortgage was delivered.

They stated that on the first Tuesday in May, 1867, when

said property was to have been sold by the mortgage *fi. fa.*, no sale was made, but as they were informed and believed, complainant sold his note, *fi. fa.* and insurance policies to said Phillips, and took therefor his note, due 1st December, 1867, with 8 per cent. interest thereon, and said deputy sheriff, at complainant's instance, had advertised a sale of said property for June sales, 1867 ; that Phillips was largely interested in the machinery and property, and with the corporation was running the same, and could sell it by said mortgage *fi. fa.*, or not sell as he thought proper, and that they feared he would so act as that their private property would be sold under the *fi. fa.* of McPherson & Co., (and the *fi. fa.* of Lewis Spitzer & Co., was then so levied on as the private property of Edwin Payne aforesaid.)

Jeroulman admitted his partnership with McPherson, stated that McPherson resided in Arkansas, and he in New York, that their *fi. fa.* was a just debt and unpaid, that he believed the foregoing answer was true, that he was informed and believed the deputy sheriff took no bond for the forthcoming of said property, although he left it with said corporation, and that if the same should be burnt, they might have to sue on the deputy sheriff's bond, or to resort to the private property of the members of the firm to collect their money.   He further averred that only $3,400 was loaned by complainant to Hoge, Mills & Co., and that all these facts were known to Phillips before his purchase aforesaid.

This answer was verified by "James Hoge, as Superintendent of said corporation," and by Jeroulman.

In July, 1867, defendants moved to dissolve the injunction, on the ground that the bill showed no sufficient equity to sustain the injunction, and if it did, the equity was sworn off by the answers.

Before the argument, Phillips, upon his motion, was made a party complainant in lieu of Holliday, and without prejudice as to the injunction, amended his bill by the following averments: He recited the fact that said injunction had been issued, averred that said property belonged to the corporation, that for two or three months past he had been the lessor of

the property of the corporation, he was operating it as well as he could, that he had to pay off certain judgments against the corporation, (which it could not pay) to prevent the sale of the property, that his lease would expire in July, 1867, and he had purchased Holliday's *fi. fa.*, &c., to prevent a sale of the property, that this purchase was made at the special instance and request of Hoge, and some of the members of the corporation, that when he purchased he did not believe McPherson & Co. would insist on selling the property on their *fi. fa.*; the corporation was not disposed to prevent the sale thereunder; that the old firm was dissolved, and the members took stock in the corporation in payment for the property of the old firm; that he was informed and believed that some of the defendants represented to Holliday when he took the mortgage, that the property was worth $30,000, sufficient to discharge the debts of the firm and corporation both, when, in fact, as he was informed, it was worth no more than sufficient to pay Holliday, and claimed that this property should be applied to the payment of this debt because it is a debt of the corporation, and the property belonged to the corporation. He prayed that the injunction should be held up.

At the hearing upon the said motion to dissolve, said complainant read an affidavit of said agent, Willis, stating that as such agent, he loaned a certain amount of money and took the mortgage, that Hoge & Mills represented to him that the property was worth from $30,000 to $40,000, and that it was unencumbered except by a judgment against Hoge, Mills & Co. for $1,500, which was to be paid by the money he was lending, that they said that with a part of the money they would insure the property, which would make Holliday safe, and further, that the intention was that the mortgage should cover the tools, and if it did not, it was not as was verbally agreed to be made. Complainant also read in evidence the note which was signed in the same way the mortgage was, and endorsed by Hoge and by Mills and protested.

In support of the answer, defendants read an affidavit by

said Hendrix and Mills, that the facts stated in it were true. Defendants also read the McPherson & Co. *fi. fa.* and levy.

The Court dissolved the injunction, and complainant's solicitors say that in this he erred.

HAMMOND & MYNATT, for complainant.

A. W. HAMMOND & SON, for defendants in error.

WALKER, J.

1. There is no such abuse of the discretion of the chancellor in this case as to require the interposition of this Court. We have said again and again, that this Court will not control the discretion of the Court below, except in case of the abuse of his discretion. Where the rights of the parties may be finally settled by a trial, and no harm be done in the meantime, we are loth to control the Court in such interlocutory orders as may be deemed necessary pending the cause.

Judgment affirmed.